James D. McCALL, et al., Plaintiffs,

v.

BURLINGTON NORTHERN/SANTA FE COMPANY, f/k/a Burlington Northern Railroad Company, et al., Defendants.

No. Civ.A. 3:96–CV–2205–L.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 31, 1999.

David B. Seserman, Dean C. Heizer, Gorsuch Kirgis LLP, Denver, CO, Eric W. Pinker, Lynn Stodghill Melsheimer & Tillotson, L.L.P., Dallas, TX, for plaintiffs.

Steven W. Sloan, Jerry D. Mason, Thompson & Knight, P.C., Dallas, TX, Charles W. Shewmake, Lawrence M. Stroik, Fort Worth, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court are Defendants' Motion for Summary Judgment, and Plaintiffs' Motion for Summary Judgment on Liability, both filed March 10, 1998. The court has carefully considered the motions, responses, replies, record evidence, and the applicable law. For the reasons that follow, Defendants' Motion for Summary Judgment **is granted in part** and **denied in part,** and Plaintiffs' Motion for Summary Judgment on Liability **is denied.**

### I. *Factual and Procedural Background*

Plaintiffs are a group of employees who retired from Defendant Burlington Northern Railroad Company ("BN") in 1991.[1] The Plaintiffs' retirement was pursuant to the terms of a voluntary separation plan entitled the Burlington Northern Railroad Company 1991 Separation Pay Plan (the "1991 Plan"). BN adopted the 1991 Plan for the purpose of reducing its workforce.

When BN announced the availability of the 1991 Plan, it stated that it was implementing the plan due to an apparent need to cut operational costs combined with the financial impact of the severe ongoing economic recession being experienced in the United States at that time. Before choosing to separate from service under the 1991 Plan, Plaintiffs were given a summary plan description to review (the "1991 SPD"). The 1991 SPD contains the following pivotal question and answer:[2]

Q. Will there be another opportunity to participate in a separation pay plan after this one?

A. The company is offering this plan in an effort to reduce its expenses due to business conditions. At this time, the company's management has not yet decided if there will be any additional voluntary separation plans. However, management has decided that if there are any additional plans, the benefits would not

---

1. The facts in this section are mostly undisputed. Any disputed facts are presented in the light most favorable to Plaintiffs.

2. Plaintiffs and Defendants disagree whether the question and answer section of the book-

let presented to Plaintiffs prior to their retirement is actually a part of the SPD; however, the answer to this question is not material to a determination of the issues in this case.

be as good as those contained in this plan.[3]

(The "1991 Q & A"). The 1991 SPD provided that each eligible plan participant would receive a lump sum payment of two weeks base salary times years of service, up to a maximum of two times annual base salary. Plaintiffs accepted the terms of the 1991 Plan and signed a release voluntarily terminating their employment with BN, and releasing BN from all causes of action or claims arising out of their employment. Each Plaintiff received all benefits due under the 1991 Plan.

In 1995 BN again decided to offer a voluntary separation pay plan (the "1995 Plan"). BN decided to adopt the 1995 Plan after a consultant it had hired advised BN that it could accomplish the same work with fewer people, and that certain work could be eliminated entirely. Only active BN employees were eligible for the 1995 Plan. Plaintiffs claim that had they continued their employment with BN instead of retiring in 1991, they would have received a larger severance payment under the 1995 Plan than they did under the 1991 Plan.

After the 1995 Plan was announced, three Plaintiffs applied for benefits under that plan. Plaintiffs' claims for benefits under the 1995 Plan were denied by BN. BN told these individuals that they could not receive benefits under the 1995 Plan because they were not active employees when the 1995 Plan was introduced and thus were ineligible to participate in the 1995 Plan. Unhappy with BN's response, Plaintiffs filed this suit on August 6, 1996. They assert claims for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), denial of benefits in violation of ERISA, estoppel, and interference with plan benefits under section 510 of ERISA, 29 U.S.C. § 1140. Defendants now move for summary judgment on all of Plaintiffs' claims. Plaintiffs also have moved for summary

judgment on the liability aspect of their claims.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to

---

**3.** Joint Appendix at Joint Exh. 1.

Defendants' motion. *Id., Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### III. *Defendants' Motion for Summary Judgment*

Defendants contend that there is no genuine issue of material fact present concerning any of Plaintiffs' claims, so that they are entitled to judgment as a matter of law. Each claim will be addressed separately below.

### A. *Breach of Fiduciary Duty*

Plan participants and beneficiaries are permitted to bring suit against ERISA plan administrators for breach of fiduciary duty. 29 U.S.C. § 1109; *Texas Life, Acc., Health & Hospital Service Ins. Guaranty Assn. v. Gaylord Entertainment Co.,* 105 F.3d 210, 214 (5th Cir.), *cert. dism'd* 521 U.S. 1113, 117 S.Ct. 2501, 138 L.Ed.2d 1006 (1997). Plaintiffs bring three claims that can be characterized as breach of fiduciary duty claims. Plaintiffs' First and Second Claims for Relief challenge BN's actions in drafting and distributing the 1991 Plan Q & A section, enacting the 1995 Plan, and denying claims for benefits under the 1995 Plan.

### 1. *Drafting and Distribution of the 1991 Plan*

This claim is based on Defendants' statement in the question and answer section of the 1991 SPD that "[m]anagement has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan."[4] Plaintiffs and Defendants have framed the legal issues related to this statement somewhat differently; however, both arguments merit consideration.

Defendants argue that the issue raised by Plaintiffs first two claims for relief is "when a fiduciary has a legal obligation to truthfully inform employees about possible future employee benefits plans."[5] Plaintiffs, on the other hand, characterize the 1991 Q & A as an unequivocal promise made with specific intent to induce their reliance thereon.[6] Plaintiffs thus argue that by enacting the 1995 Plan, Defendants have breached a binding representation and accordingly are liable to Plaintiffs for breach of fiduciary duty.

In support of their argument, Defendants correctly state that the Fifth Circuit has not considered the question of when fiduciaries become obligated to disclose information regarding future plans. They rely, however, on numerous opinions from other circuits that have considered the issue. *See, e.g., Vartanian v. Monsanto Co.,* 131 F.3d 264 (1st Cir.1997); *Hockett v. Sun Co.,* 109 F.3d 1515 (10th Cir.1997); *Muse v. International Business Machines Corp.,* 103 F.3d 490 (6th Cir.1996), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); and *Fischer v. Philadelphia Electric Co.,* 96 F.3d 1533 (3d Cir. 1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997) (*"Fischer II"*). These cases hold that there is no breach of fiduciary duty in making repre-

---

**4.** Joint Appendix at Joint Exh. 1.

**5.** Defendants' Motion for Summary Judgment ("Defendants' Motion") at p. 8.

**6.** Plaintiffs' Response to Defendants' Cross-Motion for Summary Judgment ("Plaintiffs' Response") at p. 4.

sentations about a future plan until that plan is under "serious consideration" by company management. *Vartanian,* 131 F.3d at 271; *Hockett,* 109 F.3d at 1522; *Muse,* 103 F.3d at 493; *Fischer II,* 96 F.3d at 1538.

Three circuits have further refined the concept of "serious consideration" into a three-part test. Under this test, a new plan is under serious consideration when (i) a specific proposal (ii) is being discussed for purposes of implementation (iii) by senior management with authority to implement the change. *Vartanian,* 131 F.3d at 271; *Hockett,* 109 F.3d at 1523; *Fischer II,* 96 F.3d at 1539. These cases hold that "until these three factors intersect, misrepresentations regarding future plan changes cannot be material, and thus cannot constitute a breach of fiduciary duty." *Hockett,* 109 F.3d at 1523, *citing Fischer II,* 96 F.3d at 1538.

The rationale behind these decisions is that employers frequently review their employee benefit plans on an ongoing basis as a regular part of their business operations. If any management discussion regarding these plans is required to be disclosed to employees, employers will be burdened with providing a "constant, ever-changing stream of information" to plan participants. *Hockett,* 109 F.3d at 1523. Moreover, employees would be confronted with an "avalanche of [employer] notices and disclosures" that would actually impair their ability to make sound decisions regarding retirement. *Fischer II,* 96 F.3d at 1539. Therefore, only when a plan is being seriously considered will a fiduciary obligation arise requiring disclosure of the plan to employees.

In another opinion, the Sixth Circuit aptly noted that the rationale for the three-part serious consideration test discussed above protects employees by giving employers the freedom to adopt more generous plans in the future. Employers should not be "forever deterred from giving [their] employees a better deal merely because [they] did not clearly indicate" to previous employees that a "better deal might one day be proposed." *Swinney v. General Motors Corp.,* 46 F.3d 512, 520 (6th Cir.1995). Requiring employers to disclose plans before they are adopted could discourage them from improving their pension benefits, which is contrary to the purposes of ERISA. *Lee v. E.I. DuPont de Nemours and Co.,* 894 F.2d 755, 758 (5th Cir.1990).

In the instant case, neither party contends that BN's management was seriously considering the 1995 Plan at the time the 1991 Plan was offered to, and accepted by, Plaintiffs. The factual record similarly reflects that this was not the case. Therefore, if the "serious consideration" standard advocated by Defendants were strictly applied here, Defendants would be entitled to judgment as a matter of law on Plaintiffs' breach of fiduciary duty claims.

 In response, Plaintiffs rely on the Second Circuit's decision in *Ballone v. Eastman Kodak Co.,* 109 F.3d 117 (2d Cir.1997). In *Ballone,* the court recognized the significance of the serious consideration test but held that it is but one factor in the court's ultimate inquiry, which is whether an ERISA fiduciary has made "guarantees regarding future benefits that misrepresent present facts," and whether those representations are material in that they would induce a reasonable person to rely upon them. 109 F.3d at 122. Communications regarding future plan benefits are fiduciary acts. *Varity Corp. v. Howe,* 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Affirmative material misrepresentations about proposed future changes to an employee benefit plan are actionable as breaches of fiduciary duty under ERISA. *Id.; Pocchia v. NYNEX Corp.,* 81 F.3d 275, 278 (2d Cir.), *cert. denied,* 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996).

The court agrees with Plaintiffs that the disputed statement in the 1991 Q & A affirmatively represents that BN's management had not, at that point, decided to

offer any future plans with better benefits than those included in the 1991 Plan. Therefore, it must determine whether the evidence raises a fact issue concerning the materiality and truthfulness of this statement.

■ To be actionable, the statement must be an affirmative misrepresentation of current facts regarding future plan benefits. *Ballone*, 109 F.3d at 122. Moreover, statements that accurately indicate the employer's intent at the time are not material misrepresentations leading to a breach of fiduciary duty under ERISA. *Swinney*, 46 F.3d at 520; *Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir.), *cert. denied*, 502 U.S. 938, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991). For example, in *Barnes* the company announced that the retirement program being offered was a "one-time offer" and that "it did not contemplate making any further or later offers of retirement." 927 F.2d at 543. The employees in that case alleged that they understood these statements to mean that they would have no later opportunity for a better retirement package than that currently being offered. Two years later another retirement plan was offered, and the employees who retired under the first plan sued, alleging that the company's statements in connection with the first plan were material misrepresentations. The Eleventh Circuit disagreed with the plaintiffs and held that because the statements were truthful when made, the employer could not be liable for breach of fiduciary duty. *Id.* at 544. The court added that it would be inequitable and unreasonable to expect an employer to predict future, unintended events. *Id., accord Lee*, 894 F.2d at 758 (duty to prematurely predict and disclose future plan amendments would discourage employers from offering better plans, to the detriment of employees).

Plaintiffs argue that the statement is a material misrepresentation because BN's Executive Committee "did not discuss much less decide that if there were to be any additional voluntary separation pay plans, the benefits would not be as good as those described in the 1991 SPD." [7] In support of this assertion, Plaintiffs cite to the testimony of several Executive Committee members, including Don Scott ("Scott"), BN's Senior Vice President of Human Resources at the time. Other than Scott (the drafter of the 1991 Q & A), each of these witnesses testified that they did not discuss, review, or approve the verbiage included within the 1991 Q & A.[8]

This testimony is consistent with Scott's testimony that he alone made the decision that BN would not offer a future plan with better benefits than the 1991 Plan, based upon his understanding of the management group's intention that the 1991 Plan should be the last time a voluntary separation plan would have to be offered for the purpose of a workforce reduction aimed at satisfying the company's financial objectives.[9] Scott further testified that the phrases "the Company" and "management has decided" in the 1991 Q & A refer solely to his decision to make the 1991 Plan "rich" enough to satisfy the Executive Committee's desire to appropriately downsize its workforce, without having to do so again, and to make employees feel comfortable accepting the 1991 Plan without concern that a better plan would follow shortly thereafter.[10] Scott has testified that the statement regarding management's intentions for future plans was true when made.[11] Plaintiffs have attempted to raise a fact issue regarding Scott's statement by relying on the above evidence showing that other members of BN management did not review or discuss the

---

7. Plaintiffs' Response at p. 4.

8. Joint Appendix at Plaintiffs' Exh. 6, pp. 26–29; Plaintiffs' Exh. 7, pp. 27–28 and 35–36; and Plaintiffs' Exh. 9 at p. 31.

9. *Id.* at Defendants' Exh. B, pp. 168–70.

10. *Id.* at Defendants' Exh. B, p. 92; Plaintiffs' Exh. 2, pp. 83–84.

11. *Id.* at Defendants' Exh. B, p. 170.

language in the 1991 SPD and Q & A; however, this evidence does not raise a fact issue whether Scott's statement regarding "no better benefits" in future plans was untruthful at the time it was made. The summary judgment evidence supports Defendants' position that the 1991 Q & A did not contain a material misrepresentation, and Plaintiffs have failed to set forth any evidence raising a fact issue on this point.

■■■ Plaintiffs' argument that the crucial statement is untrue because Scott and not the entire Executive Committee made the ultimate decision regarding future plan benefits ignores both the relevant facts and the applicable legal test for a material misrepresentation in an ERISA case. Under that test, a plan need only be considered by "those members of senior management with responsibility for the benefits area of the business, and who will ultimately make recommendations to the board regarding benefits operation." *Fischer II*, 96 F.3d at 1540; *see also Hockett*, 109 F.3d at 1524. It is undisputed that Scott's duties as a member of BN's management team fit this description [12]; thus, under this test Defendants' statement that management had decided there would be no better plan benefits offered in the future was truthful. Therefore, it appears that there is no genuine issue of material fact present in the record regarding Defendants' alleged misrepresentations, so that Defendants are entitled to judgment as a matter of law on this portion of Plaintiffs' breach of fiduciary duty claim (Plaintiffs' Second Claim for Relief).[13]

### 2. *Enactment of the 1995 Plan*

Plaintiffs further claim that Defendants breached their fiduciary duty when they "enacted the 1995 Plan with significantly better benefits than those contained in the 1991 Plan." [14] Defendants argue that they are entitled to summary judgment on this portion of Plaintiffs' fiduciary duty claim because an employer who adopts, amends or terminates an employee benefit plan is not acting as a fiduciary. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 889–90, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). For this reason, Defendants claim they cannot be liable for breach of fiduciary duty for adopting the 1995 Plan.

■■ Plaintiffs attack Defendants' position on this issue by arguing that if Defendants' position were adopted, even fiduciaries who lie about plans to adopt future benefit programs would not be liable for their conduct. Moreover, Plaintiffs state, their claim arising out of Defendants' adoption of the 1995 Plan is actually a claim for equitable relief. They claim they are entitled to the equitable relief of reinstatement as employees so that they will be eligible to participate in the 1995 Plan. To Plaintiffs, this entitlement arises as a consequence of the better benefits levels included in the 1995 Plan, "coupled with the fiduciary representations made by BN and the other fiduciaries in the 1991 SPD that: 'management has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan.' " [15] Because this claim necessarily depends on finding an actionable misrepresentation by Defendants, Defendants are entitled to summary judgment on this claim.

---

12. *Id.* at Defendants' Exh. A, ¶¶ 2–3. BN's management structure was such that each officer or manager was delegated the authority to make decisions in his particular area of responsibility. Very important decisions were reviewed with other members of management, but absent strong dissension or opposition, the recommendation of the officer responsible for that particular area of the company would be implemented without a formal vote of the Executive Committee. *Id.*

at ¶ 3. Plaintiffs have not produced any summary judgment proof raising a fact issue on this point.

13. Plaintiffs' First Amended Original Complaint ("Complaint") at pp. 9–11.

14. Complaint at p. 9.

15. Plaintiffs' Response at p. 9.

### 3. Denial of Benefits Under the 1995 Plan

██ Finally, Plaintiffs contend in their pleadings that Defendants breached their fiduciary duties by denying them benefits under the 1995 Plan.[16] Defendants have moved for summary judgment on the ground that this type of claim is properly characterized as one for denial of benefits under section 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to section 502(a)(3). The Fifth Circuit has concluded that when a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is a claim for denial of benefits under section 502(a)(1)(B) of ERISA rather than section 502(a)(3). *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1335 (5th Cir.), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992), *citing Cathey v. Dow Chemical Co. Medical Care Program,* 907 F.2d 554, 555 (5th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). Plaintiffs do not contest this point in their response, therefore the court will enter summary judgment in Defendants' favor on this portion of the breach of fiduciary duty claim. The substance of this claim will be analyzed as one for denial of benefits in violation of section 502(a)(1)(B).

### B. Denial of Benefits Under the 1995 Plan

Plaintiffs' Third Claim for Relief is brought pursuant to section 502(a)(1)(B) of ERISA. Plaintiffs assert that they are entitled to and have been wrongfully denied benefits under the 1995 Plan.[17] Section 502(a)(1)(B) allows plan participants to recover benefits due them under the terms of an ERISA plan. 29 U.S.C. § 1132(a)(1)(B). Defendants contend that summary judgment should be granted in their favor on this claim for two reasons. First, they argue that it was not an abuse of the plan administrator's discretion to deny Plaintiffs' additional benefits as provided for in the 1995 Plan. Second, they maintain that Plaintiffs are not entitled to any additional severance benefits under the terms of either the 1991 or 1995 Plans.

██ Plaintiffs argue that under a "natural interpretation" of the 1991 Plan, they should receive the increased benefits included in the 1995 Plan. They contend that had they not been misled by the "no better benefits" language in the 1991 Q & A, they would have declined to retire in 1991 and continued working for BN up until the 1995 Plan was offered. In support of this argument they cite *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992), wherein the Fifth Circuit held that employees who would not have retired but for the misconduct of the employer in concealing certain plan amendments would have standing to seek benefits under a later plan. Here, the "but for" causation element crucial to this theory is missing. There is no genuine issue of material fact whether BN spoke untruthfully in 1991 when it stated that later plans would not be better than the 1991 Plan. Plaintiffs are not entitled to 1995 Plan benefits because they are unable to raise a fact issue whether Defendants improperly induced them to retire by misleading them in the 1991 Q & A.

██ Next, Plaintiffs maintain that they are entitled to benefits under the 1995 Plan because they were contractually vested in the 1991 Plan, and the 1991 Plan terms contemplate that if a more advantageous plan were later offered they would be entitled to the benefit of that plan. Defendants respond that "[n]either the 1991 Plan SPD nor the Q & A states, 'if a plan with better benefits is enacted four years from now, you will be entitled to receive those benefits.' "[18] In fact, the 1991

---

16. Complaint at p. 9.

17. Complaint at pp. 11–12.

18. Defendants' Motion at p. 17.

Plan says nothing about what would happen if this type of situation arose. At most, the 1991 Q & A conveyed BN's then-present state of mind regarding future plans. ERISA plan terms are to be construed according to their plain and ordinary meaning. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir.1997). Any ambiguities in the 1991 Plan or SPD must be construed against Defendants and in favor of Plaintiffs. *Ramsey v. Colonial Life Ins. Co.*, 12 F.3d 472, 479 (5th Cir. 1994); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir.1991).

 Here there are no ambiguities in the 1991 Plan documents which would create confusion regarding any entitlement of 1991 Plan participants to enhanced severance benefits in the event that a future plan such as the 1995 Plan was adopted. The 1991 Plan documents are entirely silent regarding such an event, and thus make it clear that there was no promise or possibility of enhanced benefits being awarded to participants if a more generous plan were enacted later. Although Defendants are bound by clear and unambiguous statements in the plan documents, they are not bound to anything on which the plan documents are silent. "Contractual vesting is a narrow doctrine. To prevail, Plaintiffs must assert strong prohibitory or granting language; mere silence is not of itself abrogation." *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 938 (5th Cir.), *cert. denied*, 510 U.S. 870, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993). Even when the language of the 1991 Plan and 1991 SPD is viewed in the light most favorable to Plaintiffs, Defendants are entitled to judgment as a matter of law on Plaintiffs' claim for denial of benefits under the 1995 Plan.

### C. *Estoppel*

 Plaintiffs' next claim is brought under an estoppel theory.[19] This claim is based upon the same conduct as their fiduciary duty and denial of benefits claims. In support of this theory Plaintiffs rely on two cases that discuss the circumstances wherein representations in ERISA plan documents may or may not be binding on an employer or become contractually-vested rights of the plan participants. *See Wise*, 986 F.2d at 937–40; *Hansen*, 940 F.2d at 981–83. Neither of these cases involved an estoppel claim brought under state law; moreover, the Fifth Circuit has held that where a party seeks to recover benefits owed under the plan, state law estoppel claims are preempted by ERISA. *Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas, Inc.*, 164 F.3d 952, 954 (5th Cir.1999). As is discussed at length above, ERISA's civil enforcement provision provides Plaintiffs with the remedy they seek. 29 U.S.C. § 1132. Plaintiffs' estoppel cause of action is not cognizable in this case; therefore, Defendants are entitled to summary judgment on Plaintiffs' Fourth Claim for Relief.

### D. *Fifth Claim for Relief*

In their Fifth Claim for Relief, Plaintiffs complain that "in contravention of the representations and assurances set forth in the 1991 SPD, BN adopted the 1995 Plan which provides better benefits than those provided by the 1991 Plan."[20] Defendants argue that this claim merely recasts Plaintiffs' breach of fiduciary duty claim. Plaintiffs concede that this is an additional claim brought under a fiduciary duty theory.[21] This claim relies upon the same alleged inaccuracies in the 1991 SPD as Plaintiffs' earlier fiduciary duty claims. As discussed at length above, the fiduciary duty claims should be dismissed. For the same reasons, this claim should be dismissed as well.

### E. *Section 510 Claim*

Finally, Plaintiffs allege a claim for interference with the receipt of plan benefits

---

**19.** Complaint at pp. 12–13.

**20.** *Id.* at p. 13.

**21.** Plaintiffs' Response at p. 15.

in violation of ERISA section 510, 29 U.S.C. § 1140.[22] This claim is premised on their allegation that the 1991 SPD contained misrepresentations intentionally calculated to cause Plaintiffs to leave their employment, thus giving up compensation and benefits they otherwise would have earned had they continued working. Section 510 of ERISA prohibits employers from discharging employees for the purpose of interfering with their attainment of any right to which they are entitled under an employee benefit plan. 29 U.S.C. § 1140; *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1255 (5th Cir.1993). Plaintiffs claim that Defendants' deceptive conduct caused them to resign when they would not have otherwise done so and therefore their resignations should not be considered voluntary.

█ Like Plaintiffs' other claims, the success of this claim depends upon a finding that Defendants misrepresented the truth when they made the disputed statements in the 1991 SPD. There is no genuine issue of material fact present in the record whether Defendants materially misrepresented present facts when they made those statements; therefore, Plaintiffs' section 510 claim fails as a matter of law. Defendants are entitled to summary judgment on all of Plaintiffs' claims.

### F. *BN's Counterclaim*

In addition to moving for summary judgment on Plaintiffs' claims, BN has moved for summary judgment on its counterclaim against Plaintiffs for attorneys' fees. When Plaintiffs separated from their employment in 1991, they each signed documents releasing BN from any and all claims or causes of action, including those arising under ERISA. BN claims that it is entitled to its attorneys' fees because Plaintiffs breached their releases by filing this lawsuit.

█ The releases signed by Plaintiffs in 1991 do not apply to claims which have yet to arise. The alleged misrepresentations; however, were made back in 1991, prior to the signing of the release. Arguably, however, Plaintiffs' claims did not arise (or at least they were not aware of them) until 1995 when BN enacted the 1995 Plan. The court declines to award BN its attorneys' fees, denies this portion of Defendants' Motion for Summary Judgment, and dismisses BN's counterclaim.

### III. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs have also filed a motion for summary judgment requesting summary judgment on liability for each of their claims against Defendants. In light of the court's ruling on Defendants' Motion for Summary Judgment, this motion is denied.

### IV. *Conclusion*

Summary judgment is **granted** for Defendants on all of Plaintiffs' claims, and all of Plaintiffs' claims are hereby dismissed with prejudice. With respect to BN's counterclaim for attorneys' fees, Defendants' summary judgment motion is **denied,** and BN's counterclaim is dismissed with prejudice. Plaintiffs' Motion for Summary Judgment on Liability is **denied.** Judgment will be entered by separate document.

**SO ORDERED.**

---

**22.** Complaint at pp. 14–15.